```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

ERNEST SIMURO, and ERNEST SIMURO :
On behalf of K.S., a minor,      :
                                 :
              Plaintiffs,        :
                                 :    Case No. 2:13-cv-30
         v.                      :
                                 :
LINDA SHEDD, ERIN KEEFE, TOWN OF :
WINDSOR, DOES I through X,       :
                                 :
              Defendant.         :
                                 :
```

## ORDER AND OPINION

This is an action brought by Ernest Simuro to recover damages stemming from his arrest and prosecution based on allegations that he sexually abused his daughter and grandson. Before the Court is Defendant Linda Shedd's motion to dismiss pursuant to Rule 12(b)(6), or alternatively to strike pursuant to Rule 12(f), Counts IX and XII of the complaint as they pertain to her. For the reasons stated below, the motion to dismiss is granted without prejudice in regard to Shedd's individual liability for gross negligent conduct, which forms the legal basis of Counts IX and XII.

## BACKGROUND

Ernest Simuro's daughter, Debra Pitts, was receiving treatment at Valley Vista in February of 2008 when she told an employee that Simuro had sexually assaulted her from when she

was ten years old to when she was twenty years old. Compl. ¶ 16. Pitts quickly recanted her story when questioned by officers from the Windsor Police Department ("WPD"). *Id.* But four days later she alleged that Simuro had abused her son, K.S., for whom Simuro had been the primary caretaker since K.S.'s birth in 2003 and court appointed guardian since 2004. *Id.* ¶¶ 5, 16-17. Linda Shedd, a law enforcement officer with the WPD, investigated the allegation that Simuro abused K.S., but found no evidence of abuse. *Id.* ¶ 17.

More than two years later, Pitts again alleged that Simuro had abused her and K.S. during a meeting with Vermont Department of Children and Families ("DCF") social worker Erin Keefe. *Id.* ¶ 20. Keefe reported the allegations to the WPD and conducted her own investigation. Compl. ¶ 22. Shedd and Keefe both interviewed Simuro and K.S. separately on October 19, 2010. *Id.* ¶¶ 25, 28, 34.

Shedd arrested Simuro immediately following the interview. *Id.* ¶ 39. The next day, Shedd filed an affidavit with alleged misstatements and omissions regarding her investigation, K.S.'s statements during the interview, and Pitts's history. *Id.* ¶ 41. Based on Shedd's affidavit, Simuro was charged with one count of lewd conduct with a minor and one count of sexual assault of a child. Simuro was released on conditions, including that he have no contact with K.S. or leave Windsor County. *Id.* ¶ 42.

Pitts again alleged that Simuro had abused her during an interview with Shedd on December 19, 2010. Compl. ¶ 48. Pitts also claimed that she had seen Simuro outside of Windsor County in violation of his Conditions of Release. *Id.* ¶ 48. On June 3, 2011, Simuro was arrested for sexually assaulting Pitts and violating his Conditions of Release. *Id.* ¶ 50. Shedd filed another affidavit two days later, which included alleged misstatements and omissions regarding her interview with Pitts and her investigation of Simuro. *Id.* ¶ 51. Based in part on Shedd's affidavit, Simuro was charged with four counts of sexually assaulting Pitts. *Id.* ¶ 53.

On June 30, 2011, Simuro filed a motion to dismiss the charges relating to the alleged abuse of K.S., citing the alleged misrepresentations and omissions in Shedd's affidavit, as well as the lack of evidence to substantiate the charges. Compl. ¶ 58. The State did not respond and the superior court dismissed the charges on August 9, 2011. *Id.* The State did not appeal. *Id.* Simuro then filed a motion to dismiss the charges relating to the alleged abuse of Pitts on October 13, 2011, which also cited alleged misrepresentations and omissions in Shedd's affidavit. On November 14, 2011, the State dropped all charges against Simuro. *Id.* ¶ 60.

As a result of this ordeal, Simuro lost custody of K.S. for twenty-one months, was denied contact with K.S. for fifteen

months, and had to defend against two criminal prosecutions for sexual assault.  Simuro also claims that he was subjected to "extreme humiliation, scorn, and embarrassment in his community" and that he "suffered severe mental anguish, continuing pain and suffering, loss of income, medical costs, legal costs, the cost of living outside his own home, and bail bond costs."  *Id.* ¶ 64.

## DISCUSSION

In this action Simuro asserts fourteen separate counts against Shedd, Keefe, and the Town of Windsor.  The counts relevant to this motion are Counts IX and XII, which seek to hold Shedd and the Town of Windsor liable for Shedd's gross negligent conduct.  Counts IX and XII allege that Shedd was grossly negligent by breaching duties of care not to arrest Simuro without probable cause, not to file false or misleading affidavits, and to investigate further the allegations against Simuro.  Compl. ¶¶ 116, 132.  Count IX specifically relates to Shedd's conduct regarding the allegation that Simuro sexually assaulted K.S.  *See id.* ¶¶ 114-118.  Count XII involves Shedd's conduct regarding the allegation that Simuro sexually assaulted Pitts.  *See id.* ¶¶ 130-134.  Shedd moved to dismiss Counts IX and XII pursuant to Rule 12(b)(6) insofar as those counts seek to hold her individually liable for gross negligence.  Mot. to Dismiss at 2.

In reviewing a Rule 12(b)(6) motion to dismiss, courts consider "the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Courts "apply a plausibility standard in determining if plaintiff states a complaint for which relief may be granted." *La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, 701 F.3d 39, 42-43 (2d Cir. 2012). A plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although the Court must construe the plaintiff's factual allegations as true and draw all reasonable inferences from them, an assumption of truth is not afforded to legal conclusions. *Id.*

Section 901a provides that "[w]hen the act or omission of a municipal employee acting within the scope of employment is alleged to have caused damage to property, injury to persons, or death, the *exclusive right of action shall lie against the municipality* that employed the employee at the time of the act or omission." Vt. Stat. Ann. tit. 24, § 901a(b) (emphasis added). An exception in the statute permits actions to be brought individually against a municipal employee for willful or

5

intentional conduct, or when the employee acts outside the scope of her authority.  tit. 24, § 901a(e).[1]  Thus, Section 901a requires that claims are brought exclusively against a municipality unless the conduct of the employee is "willful, intentional, or outside the scope of the employee's authority." *Id.; see also State v. Fletcher*, 996 A.2d 213, 217 (Vt. 2010) ("[Courts] enforce the statute according to its plain terms.").

It is not disputed that Shedd was acting within her authority as a law enforcement officer regarding the conduct asserted in the complaint.  Conducting an investigation, making an arrest, and participating in a prosecution are all duties within the scope of a law enforcement officer's authority.  E.*g., Long v. L'Esperance*, 701 A.2d 1048, 1052 (1997) (noting that a police officer acted within his authority despite making a wrongful arrest).  The critical question here is whether gross negligence charged in the complaint is equivalent to the willfulness or intent required to hold a municipal employee individually liable under section 901a.

The Vermont Supreme Court stated that gross negligence "falls short of being such reckless disregard of probable consequences as is equivalent to a wil[l]ful or intentional

---

[1] Section 901a, while similar to 12 V.S.A § 5602—the statute governing official immunity for state employees—is distinct insofar as the exception allowing individual liability for municipal employee requires a showing of willfulness or intent, whereas an action can be brought individually against a state employee for either gross negligence or willful misconduct.  Vt. Stat. Ann. tit. 12, § 5602(b).

6

wrong." *Shaw v. Moore*, 162 A. 373, 374 (Vt. 1932); *Sorrell v. White*, 153 A. 359, 362 (Vt. 1931) ("The terms 'negligence' and 'wil[l]fulness' are incompatible and the opposite of each other, because negligence arises from inattention, thoughtlessness or heedlessness, while wil[l]fulness cannot exist without purpose of design."); *see also Behr v. Hook*, 787 A.2d 499, 504 (Vt. 2001) (relying on *Shaw* to deny "Plaintiff's attempt to equate an allegation of gross negligence with willful and wanton conduct."). In *Sorrell*, the Vermont Supreme Court confronted the term "wil[l]ful negligence" included in a state tort statute.[2] 153 A. at 360. The Court noted the distinction between willful negligence from gross negligence is that willful negligence contains an element of intent, whereas gross negligence does not. *Id.* at 362-63.

Because section 901a requires willful or intentional conduct to hold a municipal employee individually liable, the claims of gross negligence asserted in Counts IX and XII are legally insufficient to hold Shedd individually liable for her conduct. Instead, claims predicated on the gross negligence of

---

[2] Act 78 of the 1929 Session of the Vermont General Assembly provided: "The owner or operator of a motor vehicle shall not be liable in damages for injuries received by any occupant of the same occasioned by reason of the operation of said vehicle unless such owner or operator has received or contracted to receive pay for the carriage of said occupant, or unless such injuries are caused by the gross or willful negligence of the operator."

7

a municipal employee must be brought exclusively against the Town of Windsor. *See* tit. 24, § 901a(b).

## CONCLUSION

To the extent that Simuro seeks to hold Shedd individually liable in Counts IX and XII, section 901a intercedes to shield Shedd from allegations of gross negligence.  As such, Counts IX and XII, as they pertain to Shedd, are dismissed without prejudice.

Dated at Burlington, in the District of Vermont, this 23rd day of July, 2013.

/s/William K. Sessions III__
William K. Sessions III
U.S. District Court Judge
