UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ERNEST SIMURO, and ERNEST SIMURO    :
On behalf of K.S., a minor,        :
                                   :
                Plaintiffs,        :
                                   :      Case No. 2:13-cv-30
          v.                       :
                                   :
LINDA SHEDD, ERIN KEEFE,           :
JANET MELKE, TOWN OF               :
WINDSOR, DOES I through X,         :
                                   :
                Defendants.        :
                                   :

ORDER AND OPINION

    Plaintiffs Ernest Simuro and his grandson, K.S., bring
claims under 42 U.S.C. § 1983 and Vermont law stemming from
Simuro's arrest and prosecution on allegations that he sexually
abused his daughter and grandson.

    Defendant Linda Shedd subpoenaed Plaintiff's expert
witness, Philip J. Kinsler, Ph.D., to produce a list of previous
cases in which he was retained as an expert witness and files
related to those cases. Dr. Kinsler moves to quash the subpoena.
Subsidiary issues include choice of law, whether the subpoena
complied with notice requirements, whether the subpoena should
have included fees and allowances, and whether the subpoena was
sufficiently improper to warrant sanctions.

    For the reasons set out below the Motion to Quash is
**granted** as to the transcripts of Dr. Kinsler's prior deposition

and testimony and **denied** as to Dr. Kinsler's prior expert reports. The Motion is **denied** as moot regarding the production of Dr. Kinsler's complete files and a list of cases in which Dr. Kinsler served as an expert.

## I.   BACKGROUND

Plaintiffs are suing Linda Shedd, a law enforcement officer for the Town of Windsor; Erin Keefe and Janet Melke, social workers employed by the Vermont Department of Children and Families ("DCF"); the Town of Windsor; and Does I through X. Shedd and Keefe interviewed the alleged victim in the course of investigating child sexual abuse allegations against Simuro. Plaintiffs contend that the interviews were conducted improperly and that this contributed to Simuro's wrongful arrest and prosecution, and DCF's seizure of K.S.

Plaintiffs retained Dr. Kinsler, a licensed psychologist, as an expert witness to opine on whether Shedd and Keefe used proper interview techniques. Dr. Kinsler has testified or been deposed in a number of other child sexual abuse cases and has generated "notes and other information" for these cases that include sensitive confidential information. Dr. Kinsler's Mot. to Quash Ex. 1 ¶¶ 5, 14 [hereinafter "Mot. to Quash"].

Defendant Shedd's attorney, Kaveh Shahi, deposed Dr. Kinsler on May 15, 2014. Afterwards Shahi asked Plaintiff's counsel for documents mentioned in the deposition. Def.'s Resp.

to Mot. to Quash Ex. 3 [hereinafter "Def's Resp"]. When the
documents were not produced, Shahi issued a subpoena instructing
Dr. Kinsler to deliver his "complete file[s] (paper and
electronic)" for three cases mentioned in the deposition and a
"list of all files where [Dr. Kinsler had] been hired to do a
forensic evaluation of the interview of a child sexual abuse
victim" to Shahi's Rutland office. Subpoena, August 4, 2014. Dr.
Kinsler secured counsel, who informed the parties of his
intention to file a motion to quash the subpoena. Shahi
suggested they could "work out" the problem. Def.'s Resp. Ex. 3
at 5.

      Dr. Kinsler filed a Motion to Quash on the grounds that:
(1) the information sought is confidential and privileged, (2)
the subpoena failed to comply with New Hampshire notice
requirements, and (3) the subpoena failed to include appropriate
fees and allowances. Mot. to Quash at 1. The Motion also asks
the Court to sanction Shedd by ordering her to reimburse Dr.
Kinsler for lost earnings associated with the May 15 deposition
and for attorney's fees in responding to the subpoena. *Id*. at 2.

      In her response to the Motion Shedd retreated from her
initial request for Dr. Kinsler's "complete file[s]," stating
that "she is only requesting previous reports/testimony" from
the three cases and "the current list of cases the expert
testified in . . . ." Def.'s Resp. at 8. Dr. Kinsler replied

that he does not have transcripts of his depositions or testimony from these cases, that his expert report for one of the cases is apparently filed under seal, and that his reports were not entered into evidence in the other two cases. Dr. Kinsler's Repl. Ex. A, Ex. B. He added that he has given Defendant a list of cases in which he testified as an expert witness, highlighting cases in which he performed forensic interviews of a child sexual abuse victim, and that the dispute over the list is therefore moot. *Id*. at 1 n.1.

## II. DISCUSSION

### A. Choice of Law

Dr. Kinsler and Shedd dispute what law applies regarding privilege.[1] In another case in this district, the court held that, under Federal Rule of Evidence 501, federal psychotherapist-patient privilege applies where the cause of action arises under federal law. *Gabriel v. Albany Coll. of Pharmacy & Health Sciences - Vermont Campus*, 2:12-CV-14, 2014 WL 3378629, at *2 (D. Vt. July 10, 2014). While the plaintiff's state law claims in *Gabriel* had been dismissed at the time of this determination, the Second Circuit has elsewhere held that

---

[1] The disagreement is somewhat academic, as New Hampshire, Vermont, and federal common law take very similar approaches to patient-psychotherapist privilege. *See* 12 V.S.A. § 1612; Vt. R. Evid. 503; *State v. Curtis*, 157 Vt. 275, 597 A.2d 770 (Vt. 1991); RSA 330-A:32; N. H. R. Ev. 503; *State v. Kupchun*, 117 N.H. 412, 415, 373 A.2d 1325, 1327 (N.H. 1977); *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

4

federal common law applies to questions of privilege in cases brought under federal law with supplemental state law claims, as here. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

Under federal law, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment" are privileged and protected by Rule 501. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). As with other privileges, the psychotherapist-patient privilege may be waived. *Id.* at 15 n.14.

**B.  The Subpoenaed Files**

While the subpoena calls for the production of "complete file[s] (paper and electronic)," Defendant later stated that "she is only requesting previous reports/testimony" from the three cases named in the deposition. Reading this as a withdrawal of the initial request, the Court denies as moot Dr. Kinsler's Motion to Quash the subpoena insofar as it requests his "complete file[s]."

Dr. Kinsler states that he cannot produce the transcripts of his testimony because he does not have them. Courts have established that a "person cannot be compelled to produce pursuant to a subpoena a document which is neither in his possession nor under his control." *In re Moskowitz*, 15 B.R. 790, 791 (Bankr. S.D.N.Y. 1981) (citing *In re National Public Utility*

*Investing Corp.*, 79 F.2d 302 (2d Cir. 1935)). The Court therefore grants the Motion to Quash as to Dr. Kinsler's depositions and testimony. While these documents are discoverable, Dr. Kinsler has no duty to produce them if they are not in his possession.

Defendant's revised request calls for Dr. Kinsler's expert reports from three previous cases in which he testified. Dr. Kinsler challenges the request, contending that the reports were not entered into the public record and the former clients oppose disclosing the reports.

The published cases addressing discoverability of prior expert reports – including medical reports – do not discuss privilege.[2] This may be because communication with an expert witness who happens to be a psychotherapist does not necessarily fall into the psychotherapist-patient privilege. *See*, *e.g.*, *Johnston v. Weil*, 241 Ill. 2d 169, 185, 946 N.E.2d 329, 340 (Ill. 2011) (holding that communications with a psychologist acting as an expert witness are not privileged because the

---

[2] While not raised by the parties here, the disclosure of prior reports by medical experts has been challenged in other cases as violating the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See*, *e.g.*, *Lind v. United States*, CIV 13-032-TUC-CKJ, 2014 WL 2930486 (D. Ariz. June 30, 2014). However, courts note that HIPAA does not bar disclosure, but rather requires procedures on disclosure, including a protective order. *Id.*, citing 45 C.F.R. § 164.512(e).

purpose of the communication was not therapy and the parties were aware that the communication would not be confidential).

In addition, Federal Rule of Civil Procedure 26(a)(2)(B)(ii)requires testifying experts to disclose data and facts considered in forming their opinions. Federal courts, including many in the Second Circuit, have held that any privilege to these facts or data is waived by the act of disclosure. *See*, *e.g.*, *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 29 (W.D.N.Y. 2002)(holding that "Rule 26(a)(2)(B) requires a party to disclose core work product, or other privileged or protected material, supplied by the party to its testifying expert"); *Baum v. Vill. of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2003) (holding that expert disclosure requirement trumps work product privilege); *Mfg. Admin. & Mgmt. Sys., Inc. v. ICT Grp., Inc.*, 212 F.R.D. 110, 115 (E.D.N.Y. 2002) (collecting cases and scholarly articles). The waiver is based on the principle that parties disclose material to testifying experts under the assumption that it will be made public. *Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1375-76. If the disclosed facts and data are not protected, then the expert's

report that is based on these facts and data must also be
unprotected.[3]

Nonetheless, district courts are divided on allowing
discovery of such reports. This follows the principle that
district courts have broad latitude in managing the scope of
discovery. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76,
103 (2d Cir. 2008). Thus, one district court in this circuit has
read Rule 26 narrowly in holding that prior reports go beyond
the scope of the rule, particularly 26(a)(2)(B), and are
therefore not discoverable. *Cartier, Inc. v. Four Star Jewelry
Creations, Inc.*, 01 CIV.11295(CBM), 2003 WL 22227959, at *2
(S.D.N.Y. Sept. 26, 2003); *Surles v. Air France*, 50 Fed. R.
Serv. 3d 983, at *7 (S.D.N.Y. 2001) *aff'd*, 00CIV5004(RMBFM),
2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001). Other courts,
including one in this district, read Rule 26 more broadly to
allow discovery of some prior reports under 26(b)(1). *See*, *e.g.*,
*Kelly, D.O. v. Provident Life & Acc. Ins. Co.*, 1:09-CV-70, 2010
WL 3259997, at *1 (D. Vt. Aug. 17, 2010); *Douponce v. Drake*, 183

---

[3] While cases apply this waiver principle to attorney-client and
work product privilege, courts also note that it should apply
equally to all forms of privilege. *E.g. Herman v. Marine Midland
Bank*, 207 F.R.D. at 29; *Fialkowski v. Perry*, No. CIV.A. 11-5139,
2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) (citing *Synthes
Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 462 (E.D. Pa. 2005)).
This is logical, as the patient-psychotherapist privilege
operates in a similar way to, and serves a similar purpose as,
the attorney-client privilege. *See Jaffee*, 518 U.S. at 10-11.

F.R.D. 565, 567 (D. Colo. 1998); *ParkerVision, Inc. v. Qualcomm Inc.*, 3:11-CV-719-J-37-TEM, 2013 WL 3771226, at *2 (M.D. Fla. July 17, 2013). In making this determination these courts look to relevance and probative value, the burden on the responding party, and, to a lesser extent, confidentiality. *Id.*

The reports here are relevant to the adequacy of interviews in child sexual abuse cases, a central element of the Plaintiffs' claims. They are also relevant to Dr. Kinsler's credibility and whether there is inconsistency in his analysis of these interviews. *See Douponce*, 183 F.R.D. at 565 (allowing discovery of prior independent medical examination reports, in part because they were relevant to potential bias on the part of the examining physician); *Safeco Ins. Co. of Am. v. Vecsey*, 259 F.R.D. 23, 33 (D. Conn. 2009) (holding that reports written by or relied on by expert witness in other cases are relevant as to the expert's credibility and are subject to discovery); *ParkerVision*, 2013 WL 3771226, at *2 (holding that prior expert reports are relevant and discoverable in part because the reports can be used for impeachment and the information in the reports was related to expected testimony).

In addition, the burden of producing the reports will presumably be slight. *See Kelly*, 2010 WL 3259997, at *1 (finding no undue burden in producing fewer than twenty reports). Finally, the parties must "stipulate to a confidentiality

agreement and protective order governing use and disclosure of the reports." *Id*. at *3.

Considering the relevance and probative value of the reports, and because the burden of response and risk of exposing confidential information is slight, the Court holds that the reports are discoverable under Rule 26(b)(1). The Motion to Quash as to the prior reports is therefore denied.

**C.   The Subpoenaed List**

Shedd initially subpoenaed a list of cases in which Dr. Kinsler was hired to conduct forensic evaluations of child sexual abuse victim interviews. Later she narrowed her request to a list of cases in which Dr. Kinsler testified as an expert. Def.'s Resp. at 8-9. Because Dr. Kinsler has provided the latter, the Court denies as moot the Motion to Quash regarding any additional list.

**D.   Compliance With Notice Requirements**

Dr. Kinsler asserts that the subpoena should be quashed because a party seeking medical records from a hospital or other provider "must give notice to the persons whose information is being sought" under New Hampshire law. Mot. to Quash at 7. However, the cases cited by Dr. Kinsler apply this rule only to *privileged* medical records. *In re C.T.*, 999 A.2d 210, 217 (N.H. 2010); *In re Grand Jury Subpoena for Med. Records of Payne*, 839 A.2d 837, 848 (N.H. 2004). The rule does not apply to the expert

10

reports because they are not privileged. The Court therefore denies the Motion to Quash the reports due to failure to give notice.

**E.   Whether the Subpoena Should Have Included Fees and Allowances**

Dr. Kinsler moves to quash the subpoena for failure to include fees and allowances. Non-parties summoned by subpoena to testify by deposition (*i.e.* by a *subpoena ad testificandum*) should be paid fees and allowances. Fed. R. Civ. P. 45(b)(1); 28 U.S.C. § 1821. However, the subpoena here calls for the production of documents, not for testimony, and is therefore a *subpoena duces tecum*. The cases cited by Dr. Kinsler indicating he should be paid are inapposite because they do not deal with *duces tecum* subpoenas. *Brown v. Hendler*, 09 CIV. 4486 RLE, 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 495 (9th Cir. 1983). Nor is there any indication that Dr. Kinsler has lost any earnings, or will lose earnings, as a result of Defendant issuing the subpoena. For these reasons, the Court denies the Motion to Quash for failure to include fees and allowances.

**F.   Whether the Court Should Sanction Shedd**

Dr. Kinsler asks the Court to sanction Shedd pursuant to Federal Rule of Civil Procedure 45(d)(1) by ordering her to pay him for lost earnings associated with attending the May 15

deposition, and for attorney's fees related to responding to the subpoena.

Under Rule 45 a court must impose a sanction where a subpoena imposes undue burden or expense. Fed. R. Civ. P. 45(d)(1). The rule leaves district courts discretion regarding the form of such sanctions. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Nevertheless, the Second Circuit has reversed sanctions for attorney's fees or lost earnings absent a clear factual showing of bad faith and "clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes" *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982) (internal quotation marks and citation omitted).

The record here does not contain "clear evidence" of bad faith or harassment. Shahi was quick to respond to complaints about the subpoena by offering to resolve the problem and then narrowing the request once the Motion to Quash was filed. Dr. Kinsler has not shown that producing the documents would not result in any undue burden or expense. Absent bad faith or any other cause, the Court declines to impose sanctions.

Dr. Kinsler also asks the Court to order Defendant to pay him for "lost earnings" associated with the May 15 deposition. Mot. to Quash at 8. Because Dr. Kinsler could not logically have suffered lost earnings for his May 15 deposition as a result of

a subpoena issued almost three months later, the Court also declines to order payment for any lost earnings.

Dated at Burlington, in the District of Vermont, this 6th day of November, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge